HENRY VOGLE *et al.*

*v.*

ADAM RIPPER.

1. WRITTEN INSTRUMENTS — *alteration of.* The effect of an alteration of a written instrument depends upon its nature, the person by whom and the intention with which it was made. If neither the rights, interests, duties or obligations of either of the parties are in any manner changed, an alteration may be considered as immaterial.

2. SAME. A material alteration of an instrument fraudulently made by its holder, deprives the wrong-doer of all rights by virtue of it, and he cannot supply its place by other evidence.

3. SAME. But where the alteration was not fraudulent, although the identity of the instrument may be destroyed, it should not cancel the debt, of which the instrument was merely evidence.

4. ALLEGATIONS AND PROOFS. In a bill to foreclose a mortgage it was alleged that the notes secured by it were altered by consent of parties after they were made, so as to draw ten instead of six per cent. interest. The answer denied that the alteration was made by consent, but did not aver that it was fraudulently made. As the intention with which it was made was not put in issue by the answer, the court would not consider the evidence in regard to it.

5. SAME. The complainant had a right to have notice upon the record in a precise and unambiguous manner, of the conclusions of fact intended to be drawn from allegations in an answer.

WRIT OF ERROR to the Circuit Court of Peoria county; Hon. A. L. MERRIMAN, Judge, presiding.

This was a bill in chancery to foreclose a mortgage filed by Ripper against Vogle *et al.*, in the Tazewell Circuit Court, and taken by change of venue to the Circuit Court of Peoria county, where a decree was rendered in favor of complainant. The notes secured by the mortgage had been altered after they had been made, so as to draw ten instead of six per cent. interest, and the defendant relied upon this alteration as a discharge of the mortgage.

Mr. H. M. WEAD, for the plaintiff in error, submitted the following points and authorities:

The bill in this case alleges that three notes, for $1,166.66 each, were executed by Vogle to William Stanberry on the 27th February, 1857. The notes were payable in one, two and three years, with interest at the rate of *six per cent.* per annum. A mortgage was given on the lands, at the same time, to secure the payment of the notes. Afterwards, on the 8th of March, 1859, Vogle sold the lands to Philip Heisel, subject, of course, to the mortgage.

The bill then alleges that, on the 30th October, 1860, there was due upon the notes for principal and interest, the sum of $2,427.32, *and Philip Heisel and Henry Vogle then entered into an agreement with complainant* to pay ten per cent. interest on that sum, and changed said note from six to ten per cent.

It is here set forth that the notes were so altered as to draw ten per cent. instead of six per cent. interest.

I. We deny that there is any proof to show that *Vogle and Heisel changed or altered the notes, or that they ever agreed to do so.*

They are called upon to answer the bill *under oath*, and to overcome their oath, there must be proof equivalent to that of two uncontradicted witnesses. The charge is, that Vogle and Heisel agreed to pay ten per cent. interest and changed *the notes from six to ten per cent.* It is not alleged that they ever *agreed* to change or alter the notes, but the charge is, that after they had agreed to pay ten per cent. (by a separate written agreement), they did change or alter the notes. It is not alleged that the alteration was made by some one else, to which they assented, but the allegation is that they did it.

Both defendants *deny under oath*, that the alteration was made with their permission or authority; that they never did agree to any such alteration, and Heisel insists that, if it has been done, the agreement is without consideration and void and that it is not included in the mortgage.

Now what is the proof? It must be recollected that the agreement to pay ten per cent. interest is a separate agreement from the notes, made on the 20th October, 1860, by Vogle alone.

This agreement does not authorize the notes to be altered, it does not purport to bind the land for the payment of the ten per cent.; it does not purport to be given for any new or valuable consideration, nor for an extension of the time of payment; nor is it under seal, or signed by Heisel.

If there was any other agreement, it must have been a *verbal* agreement made at the same time, and it should have been inserted in the written agreement, or it is not binding.

II. Westfield, the witness, swears that Stanberry and Vogle both told him, on the 20th October, 1860, that Stanberry had altered the notes, *but not at that date;* and *Stanberry* afterwards told him that Vogle was present and had agreed to the alteration.

Now this whole story rests upon the assertion of *Stanberry, alone, who was deeply interested in sustaining the validity of the notes, because he had assigned them to complainant, and would have them to pay* if complainant failed to collect them of Vogle or the land. The story which Stanberry told Westfield was, that Vogle had agreed to the alteration; there was no pretense that Heisel had agreed to it. And Stanberry himself, in his deposition, swears that *he* made the alteration by agreement with Vogle, but does not pretend that Heisel ever knew of the alteration, or agreed to it. Even Westfield shows that Heisel was not present on the 20th October, 1860, when the agreement with Vogle was made. 22 Ill. 366 ; 26 id. 36.

3. The agreement marked exhibit A, signed by Vogle, is not proved to have been executed or signed by Heisel. Neither of the witnesses saw him sign it, and neither knew his handwriting.

4. This is no sufficient proof that either Vogle or Heisel ever agreed to the alteration of the notes.

The only *proof* on that point is the oath of Stanberry, (who is interested, and whose deposition should have been excluded), but that is met by the oath of Vogle. This is oath against oath, *and all the circumstances are against* Stanberry, for the *agreement they did make* was reduced to writing and signed by

Vogle, and the writing does not authorize any alteration of the notes.

The conclusion, then, is irresistible, that Stanberry altered the notes without authority from Vogle. He does not pretend to have had any authority from Heisel. He may have supposed the written agreement authorized him to alter the notes; but his supposition cannot control. Heisel had bought the land, and had the notes to pay; if they were altered legally so as to draw a greater interest, he would have it to pay; if they were altered *illegally*, the land would be released; *and it was released.*

5. The notes *were altered* illegally and wrongfully by Stan-berry so as to secure 10 per cent. interest to Ripper. Stanberry in his testimony, says "that it was agreed between *Ripper and Vogle* that the notes should draw 10 per cent. interest after maturity, but after this, when Ripper was not present, Stanberry altered the notes without the knowledge of Ripper."

6. Now, suppose the notes were altered by Stanberry by virtue of an agreement between him and Vogle, what effect would the alteration have on Heisel? Would it render the notes void as to him and the land conveyed to him by Vogle? Would the land be released? In 21 Ill. 130, this court say if notes were altered, the security is thereby released. Why released? The court do not say. I infer, then, it is because of the wrong, the *iniquity* in making the alteration. It is no longer the note signed by the surety. *It is not his note.* So in this case, the notes sued on are not the notes which the mortgage was given to secure. Those notes have been destroyed, annulled, rendered void, as to the security held for their payment, by the *wrongful, willful, fraudulent and criminal* act of Stanberry.

It will not do to encourage such acts. It is destructive of all safety, it is injurious to public morals and sound policy. It would encourage fraud and crime, and for this reason should be censured.

II. But there is another error which is fatal in this case. The defendant offered in evidence *three* receipts signed by

Stanberry, and proved his handwriting thereto. They were rejected by the court. Why? No one knows. They were legal and competent evidence. There is not even a plausible pretext that they were not. Even if the amount specified in each had been indorsed on the notes, the receipts were still the best evidence. But they did show $300 paid which was not indorsed on the note. Vogle had sworn, in his answer under oath, that he had paid more, and his receipts showed that his answer was true. Why, then, were these receipts rejected? Ingenuity can form no plausible excuse for an error so gross and palpable, and this court can hardly fail to reverse the judgment.

III. The deposition of Stanberry was admitted wrongfully, against the objection of defendants. Stanberry was legally, morally, and deeply *interested* and clearly incompetent. Having indorsed the notes, he would have them to pay unless they were paid by the land.

Mr. C. A. ROBERTS and Mr. R. W. IRELAND presented the following points and authorities for the defendant in error:

In this case, the notes given by Vogle to Stanberry were to draw six per cent. interest, but afterwards, to induce Ripper to take the notes of Stanberry, Vogle agreed with Ripper and Stanberry to alter the notes from six to ten per cent. interest.

The witness Westfield testifies that both Vogle and Stanberry told him on the 20th of October, 1860, that Stanberry had altered the notes from six to ten per cent.

To say nothing of the evidence of Stanberry, the evidence of Westfield, with the corroborating circumstances of Vogle signing the agreement, which he does not pretend to deny, and the admission in Heisel's answer that the complainant was entitled to the amount due on the notes as originally made, all go to show that Vogle's answer in that respect is evasive and untrue.

An answer under oath may be disproved by one witness, with strong corroborating circumstances. 26 Ill. 36; 2 Sto. Eq. Juris. § 1528. There can be no doubt, from the answer

of Heisel, that he knew of the alteration of the notes, and consented to and ratified the same, and in doing so, is bound by them as altered. 21 Ill. 130.

The alteration of the notes by Stanberry in Vogle's presence, and with his knowledge and consent, and in fact at his solicitation, is just as binding on Vogle as if he had made the alteration himself.

True, as set forth in the decree of the court below, it did not sufficiently appear from the evidence that Heisel was a party to or consented to the alteration, consequently the decree was for the amount of the notes as set forth and described in the mortgage, with interest computed at six per cent, less the credits.

There was no one wronged by the decree for the amount of the notes with interest at six per cent.

That the alteration was made by and with the consent of Vogle, the payer of the notes, there is not a shadow of doubt. Westfield testifies positively to the fact, and is corroborated by the written agreement, signed by Vogle, which is not denied, and by other circumstances so strong as to convince any one that the matter of the alteration was perfectly understood by all parties.

Heisel was not a party to the notes, either as principal or surety, and even he knew nothing of the alteration, he is not thereby injured in the rendering of the decree which was for the amount as set forth in the mortgage, which he had notice, when he bought the land, was an incumbrance to that amount.

If there was anything *wrong, willful, fraudulent* or *criminal* in the act of altering the notes, *Vogle was the one who is to blame for it all,* for it was with his knowledge and consent, and for his sole benefit, that the same was done, for the purpose of inducing Ripper to take them. The alteration was made between the payee and payer, for the sole benefit of the payer, the payee having parted with all his interest in the notes; and now shall the payer take advantage of a thing that was done for his benefit and with his consent?

I fail to see any error in the rejection of the receipts offered

in evidence, by Vogle; the amounts they specified had been once credited on the notes, and they were therefore properly rejected, except one, which was admitted, and they got the benefit of by a reduction of that amount on the decree.

Did the court err in admitting the deposition of Stanberry? He was not beneficially interested in the result of the suit, having parted with his interest before it was commenced; was only a nominal defendant, and I can see no good reason why his evidence should have been rejected.

The decree ought, it seems to me, to be affirmed. It was for no greater amount than Vogle originally promised to pay, and what Heisel knew, when he bought the land, was to be paid. Heisel was not taken by surprise, nor was either he or Vogle injured by the judgment.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

The effect of an alteration in a written instrument depends upon its nature, the person by whom, and the intention with which it was made. If neither the rights or interests, duties or obligations of either of the parties are in any manner changed, an alteration may be considered as immaterial. It has been considered that even an immaterial alteration, if fraudulently made, would annul the instrument (2 Pars. on Notes and Bills 572), but this opinion has not been uniformly adopted; and it has been held that the motive cannot be inquired into unless the act itself materially affects the rights of the parties. *Moye* v. *Herndon*, 30 Miss. 110. An alteration by a stranger ought not to destroy the rights of innocent parties. 2 Pars. on Notes and Bills 574. There is a conflict of opinion regarding the existence of a right of action on an instrument which has been altered by a stranger; but whatever may be considered as the correct rule in that regard, we are unable to perceive any good reason why such an alteration should cancel a debt, of which the instrument was merely evidence. *Davidson* v. *Cooper*, 11 M. & W. 778. It ought to be regarded as a spoliation. A material alteration of an instrument, fraudulently made by its holder, justly deprives the wrong-doer of all

rights by virtue of it. The identity of the instrument is thereby destroyed, and courts will not assist persons who have been guilty of a fraud, to carry out the transaction wherein it was perpetrated. A party who voluntarily and fraudulently destroys the evidence of a debt agreed upon by the parties, ought not to be allowed to supply its place by other evidence. 2 Pars. on Notes and Bills 572; *Waring* v. *Smith*, 2 Barb. Ch. 135.

In a court of equity a mortgage is regarded as an incident of the debt, and where a mortgagee has released or discharged the debt by a fraudulent alteration or destruction of the written evidence of it, he ought not to be permitted to sustain a suit for its recovery; but where the alteration was not fraudulent, although the identity of the instrument may be destroyed, we think it should not cancel a debt, of which the instrument was merely evidence. If there was no attempt to defraud, there is no reason why a court should not assist the creditor as far as it can consistently

In the case under consideration, it was urged in argument that the alterations were fraudulently made. The bill alleges that the notes were altered with the assent of Vogle and Heisel, so as to bear interest at the rate of *ten* per cent. instead of *six* per cent., as they were originally written. The answers deny that the alterations were made by consent, but do not aver that they were fraudulently made. While the answers aver that the identity of the notes is destroyed, they do not aver that it was fraudulently done. The complainant has a right to have notice upon the record, in a precise and unambiguous manner, of the conclusions of fact intended to be drawn from allegations in an answer. The defendant is not required to state conclusions of law which he would deduce from the facts set forth; but if he states in his answer certain facts as evidence of a particular case which he represents to be the consequence of such facts, and on them rests his defense, he is not afterwards at liberty to use the same facts for the purpose of establishing a different defense from that to which he has drawn the complainant's attention by his answer. 2 Dan. Ch. Pr. 815; *Bennett* v.

*Neale*, Wightw. 324. We think the intention with which the alterations were made is a material fact. The character of the act and the effect of it depend upon the intention with which it was done. As the intention is not put in issue by the answer, it would be improper for us to consider the evidence in regard to it.

The decree of the court below was for the sum which would have been due upon the notes if they had not been altered, and the testimony of Stanberry relating to the alterations merely, and the intention with which they were made, was immaterial, and was in no way relied upon in the conclusion to which the court arrived.

The complainant failed to sustain the allegations of his bill by which he sought a decree for a greater sum, and the defendant cannot complain that the evidence adduced in support of such allegations was inadmissible. The decree was rendered for the sum due, and it is affirmed.

*Decree affirmed.*