## THE FIRST NATIONAL BANK OF SPRINGFIELD
### v.
### J. F. RYAN ET AL.

*Negotiable Instruments—Note—Alteration after Delivery—Principal and Surety—Guaranty—Construction—Alteration.*

1.   When an instrument has been materially altered it can not be sued upon in its altered form, nor read in evidence to support an action, but when the holder discharges the burden of proof upon him, by showing that the material alteration was made by mistake and without a fraudulent intention, the right of action upon the consideration for which it was given remains.

2.   An innocent, though material alteration in a promissory note, which does not in fact vary the relations of the parties or affect the liability of the makers, may be explained.

[Opinion filed August 26, 1886.]

APPEAL from the Circuit Court of Sangamon County.

Messrs. PALMER, ROBINSON & SHUTT and MATHENY & MATHENY, for appellants.

Messrs. PATTON & HAMILTON, for appellees.

WALL, J.   The appellees made and delivered to P. P. O'Donnell their promissory note, bearing date August 30, 1884, for $4,200, payable to the First National Bank of Springfield, Illinois, at ninety days.

The note was given for the debt of appellee, J. F. Ryan, who was the first signer—the others signing as his sureties—

for property purchased of O'Donnell. It was understood by the parties that the note was to be negotiated by O'Donnell at the bank, and in that way he was to realize the purchase money. O'Donnell went with Ryan and W. J. Reilly to the bank, and when the former presented the note for discount the cashier, Weber, said he would require O'Donnell to guarantee the paper, as the money was to go to his credit, whereupon O'Donnell signed his name at the foot of the note as a maker. The three men then left the bank, and the money, for which the note was discounted, was passed to the credit of O'Donnell. In a few moments the latter returned, saying he should not have signed the face of the note, but that his name ought to be on the back of it. After a little discussion of the matter the cashier erased O'Donnell's name at the foot of the note, wrote the words "P. P. O'Donnell, at —" in the space above the line occupied by the name of the bank, and stamped a guarantee on the back, to which guarantee O'Donnell signed his name. The effect of this change in the form of the paper was to make it payable to P. P. O'Donnell, and by him indorsed and guaranteed to the bank, instead of being payable to the bank, and signed by O'Donnell apparently as a joint maker, but really as a surety. The question is, what consequence the law will attach to this change, assuming it was made without the knowledge or consent of appellees.

It is contended on the one hand that the form and legal effect of the contract being altered, its identity is destroyed and the liability of the signers discharged. On the other hand it is contended that the real object of all was that the paper should be negotiated at the bank, for the benefit of O'Donnell, and that the change, while in form as stated, does not in fact and in substance vary the position which the appellees intended to assume, and therefore they should not be allowed to escape liability on this ground. When the note was left at the bank, with the names of appellees and O'Donnell signed to it, all the signers, including O'Donnell, were jointly liable to the bank for the amount, and might have been so held by suit, and the appellees were all jointly liable to O'Donnell, if he had to pay it, he being

their surety.   As the paper now is, the appellees are all liable
to the bank, and so is O'Donnell, but he can not be sued jointly
with them.   He may be sued on his guaranty, which includes
an assignment of the paper, and if the change had not been
made, he might have been sued separately as a signer; but by
the strict rules of law, the four appellees might have objected
had they been sued without joining the other maker, he being
alive and not discharged.   In either case the liability of
O'Donnell to the bank for the full amount was absolute, and
in either case O'Donnell could hold the appellees for the
whole sum in case the bank required him to pay it.   The
result is that there has been a substantial change as to the
form of the contract and as to the mode by which the rela-
tive rights of the parties shall be ascertained and fixed, but
the ultimate liability of the appellees is the same in either
case, and if they are required to pay the note in this suit
they will be in precisely the  position which was con-
templated by all parties in the first place, and will be held to
the very liability which was in view when O'Donnell signed
the note as surety and delivered it to the bank.

As respects the original transaction between the bank and
the appellees, the substance of it was a loan of money to
them, to be by them paid to O'Donnell, though it was in fact
paid to the latter directly and not through them.   The con-
sideration moving to the appellees was the money paid to
O'Donnell for their benefit.

When an instrument has been materially altered it can not
be sued upon in its altered form, nor read in evidence to sup-
port an action; but when the holder discharges the burden of
proof upon him by showing that the material alteration was
made by mistake and without any fraudulent intent, the right
of action upon the consideration for which it was given
remains.   Vogle v. Ripper, 34 Ill. 100.

Where there has been an innocent but material alteration,
it has been suggested that a court of equity would restore the
instrument to its original form, and there is no sufficient rea-
son why the party himself should not be permitted to undo
what he has mistakenly done, provided no other person has

become so situated toward the instrument that it will affect him prejudicially.

The burden of proving innocence would be a sufficient safeguard, and when innocence is proved and the *prima facie* presumption of guilt répelled, it would seem too rigorous to inflict on the innocent a penalty deserved only by the guilty. 2 Daniel Neg. Inst., Secs. 1413, 1414, 1415; 2 Parsons' Notes and Bills, 570.

In the case of Horst v. Wagner, 43 Iowa, 373, (S. C.) 22 Am. Rep. 255, the payee of a note desiring to transfer it, and being ignorant of the appropriate method, erased his own name and inserted that of the transferee, but afterward, and before delivery, restored the instrument to its original form, and transferred it by indorsement. It was held the maker was not discharged and the indorsee was permitted to recover. The court said: "The payee was authorized by the very terms of the note to make it payable to the plaintiff. He was authorized to accomplish the very result which he intended to accomplish. The objection, therefore, is not as to result aimed at, but to the manner of effecting it. Had the result aimed at not been authorized, it would be more doubtful whether the alteration could be stricken out and the instrument restored. But as the alteration in this case was simply an unauthorized manner of accomplishing an authorized result, we can not regard it such an alteration as may not be stricken out, so as to leave the instrument in its original form."

If the party who made the alteration innocently and with no improper purpose, may restore the instrument to its original condition, what reason is there why the court in which the case is tried may not treat it as though restored? Why compel the party to ask the aid of a court of chancery or to take the risk of further complication by a second alteration? If the facts present a case where it is proper to restore the instrument, is it not "sticking in the back" to refuse relief because the instrument has not been restored?

If, however, it should seem to be going too far in advance of precedent to take this view, there is no question that recovery may be had upon the original consideration. To quote

from Vogle v. Ripper, *supra:* "Where the alteration was not fraudulent, although the identity of the instrument may be destroyed, we think it should not cancel a debt of which the instrument was merely evidence. If there was no attempt to defraud, there is no reason why a court should not assist the creditor as far as it can consistently."

There were common counts in the declaration upon which such recovery might be had.

If it should be suggested that a restoration of the instrument would again place the name of O'Donnell at the foot as a maker, and that it would have been necessary to join him as a co-defendant, we think it may be answered that the change in the position of his name from the face of the note as maker, to the back as guarantor, can not be regarded as at all material, so far as these appellees are concerned. He was but a surety for them, and in no case could they require him to pay any part of the money. Had there been no change but that, it would be clearly immaterial.

If it should be suggested that in a suit for the original consideration, O'Donnell should have been joined because his name was on the note when it was delivered to the bank, the answer is again that he was but a surety and the transaction was really between the parties to this suit, the consideration being the money loaned by the plaintiff to the defendants. Such an objection must be made by plea in abatement, and comes too late after plea in bar, unless apparent on the face of the pleadings. 1 Ch. Pl. 46,

We have considered the alteration as not fraudulently made, and material only so far as the insertion of O'Donnell's name as payee is concerned; and it is not important to discuss the effect of other alterations, those immaterial, fraudulent, made by third persons, etc., etc. For a useful collection of authorities upon the subject in general, see the note to Draper v. Wood, 17 Am. Rep. 92.

This case was tried by the court without a jury and the issues found for defendants. In our opinion the plaintiff was entitled to recover. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## FOURTH DISTRICT—AUGUST TERM, 1889.