## A. LANDRETH CO. *v.* SCHEVENEL.

### (*Jackson.* May 22, 1899.)

1. FRAUD. *Does not vitiate contract or settlement, when.*

   Fraud in procuring the settlement and compromise of the claims of a wholesale merchant against a retail merchant cannot be predicated of the latter's failure to keep his promise to continue the business and his relation with the former, although he did not intend to keep the promise when he made it, as it relates to a matter in the future, and, besides, the benefit from the continuance of the business is uncertain and purely speculative. (*Post, pp. 488–491.*)

   Cases cited: Farrar *v.* Bridges, 3 Hum., 565; 81 Fed. Rep., 64; 15 C. B., 207.

2. RESCISSION. *Statu quo.*

   To authorize the rescission of a contract or settlement for fraud, the parties must be put in *statu quo.* (*Post, p. 492.*)

3. SAME. *Promptness required.*

   A party seeking to repudiate a contract for fraud of the other party, must do so at once upon learning of the facts constituting the fraud. (*Post, pp. 492, 493.*)

   Cases cited and approved: Woodfolk *v.* Marley, 98 Tenn., 467; 93 U. S., 62; 48 S. W. R., 729; 83 N. Y., 300.

4. FRAUDULENT CONVEYANCE. *Debts must be shown.*

   Complainant must prove debts due him in order to justify the setting aside of an alleged fraudulent conveyance of his debtor at his instance. (*Post, pp. 492, 493.*)

   Case cited: 17 Wall., 521.

---

#### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JNO. L. T. SNEED, Ch.

S. M. NEELY for Landreth Co.

WATSON & FITZHUGH and CARROLL & McKELLAR for Schevenel & Co.

McFARLAND, Sp. J.    This was a bill filed by the A. Landreth Co. against A. W. Schevenel & Co. for the purpose of rescinding and setting aside a settlement made between the parties, and also to subject certain real estate to the payment of complainant's debts, conveyed by Schevenel, one of the partners, to his wife.

The facts are that A. W. Schevenel & Co., a firm composed of A. W. Schevenel and one Pace, was doing business in Memphis, Tennessee, in 1897. Beginning with August 20, 1897, the complainants sold to A. W. Schevenel & Co. goods amounting to sixteen hundred and ninety-six and $\frac{16}{100}$ dollars ($1,696.16).    A. W. Schevenel & Co. were engaged in the grocery business in Memphis.    On November 8, 1897, the firm made an assignment to A. B. Duncan, as trustee, for certain creditors, and preferring some of the creditors, but the complainants were not included in the preferences.    On March 1, 1898, the complainants and said firm compromised their indebtedness, by which the firm paid thirty-three and one-third ($33\frac{1}{3}$) per cent. of their indebtedness, amounting to five hundred and sixty-five and $\frac{41}{100}$ dollars ($565.41) in cash, and executed their three notes, due six, nine, and twelve months, for the balance of their account.    It is this settlement

and compromise that this bill is filed to set aside. It also seeks to set aside a conveyance of a tract of land made by A. W. Schevenel to his wife March 25, 1897, but not recorded until November 8, 1897.

The allegations in the bill upon which relief is predicated as to this compromise, are as follows: "This settlement was accepted by your complainants solely upon the express representation that the firm of Schevenel & Co. would continue in the same business as they had conducted and would resume business as before the assignment. Your complainants aver they would not have accepted any order of settlement from A. W. Schevenel & Co. less than their whole debt in cash, except such settlement as the above, and this was entered into upon, and in consequence of, repeated assurances that the firm of A. W. Schevenel would resume business and their business relations with your complainants, and it was due absolutely and entirely to these representations and assurances that your complainants accepted settlement on this basis. Your complainants aver these representations were false and fraudulent, and known by the firm to be so, and that these representations have never been carried out by the firm, nor have they paid any of the above notes, although two of them have long since become due and payable." No offer to return the five hundred and sixty-five and $\frac{41}{100}$ ($565.41) dollars was made.

The ground upon which it was sought to set

A. Landreth Co. v. Schevenel.

aside the conveyance to the wife is that that conveyance was made during the existence of the original indebtedness, and, that indebtedness not being settled, the conveyance was, therefore, void as to these existing creditors.

There was a demurrer filed by the defendants, which raised the question properly as to the sufficiency of this bill. This demurrer was allowed, and the complainants have appealed to this Court.

The first question to be determined is whether or not the allegations of the bill, as to the representations made by A. W. Schevenel & Co. as to future business, if done fraudulently, is sufficient to rescind the contract without the repayment of the cash received. Independent of the question of whether an offer to return the cash received is necessary, we are of opinion that the grounds alleged in the bill are totally insufficient. "Misrepresentations, in order to be fraudulent, must be of facts at the time or previously existing, and not mere promises for the future." 8 Am. & Eng. Enc. L., 636; *Fenwick* v. *Grimes*, 5 Cranch. C. C., 439; *Long* v. *Woodman*, 58 Me., 49; *Burt* v. *Bowles*, 69 Ind., 1; *Bethell* v. *Bethell*, 92 Ind., 318; *Bigham* v. *Bigham*, 57 Tex., 238; Kerr on Fraud and Mistakes, 88.

"Fraudulent expressions of opinion are generally insufficient to justify the rescission of a contract executed and acted on by the parties. An action for rescission for fraud cannot be predicated on a promise to do something in the future, although the

party promising had no intention of fulfilling the promise at the time it was made." 1 Beach Mod. Law of Contracts, Sec. 797, and cases cited.

In *Baelie* v. *Taylor*, 136 Ind., 368 (36 N. E. Rep., 269), the Court declared that these principles, as above announced, are elementary. "As distinguished from the false representation of a fact, the false representation as to a matter of intention not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law, nor does it afford a ground of relief in equity." Kerr on Fraud and Mistake, 88. Thus where it was alleged that the defendant fraudulently represented that he would grant the plaintiff an easement by locating a street, this was held not to be fraud. *Richter* v. *Irvine*, 28 Ind., 26. So, where one was induced to grant another a lease on the representation that he intended to use the premises for a certain purpose, whereas he intended to use, and did use, them for a totally different purpose, it was held that relief could not be granted. *Feret* v. *Hill*, 15 C. B., 207. "Statements of forecast, opinion, or expectation that are in substance matters of inference, cannot be considered false representations justifying the rescission of a contract." *Green* v. *Society Anonyme, etc.*, 81 Fed. Rep., 64.

The case of *Farrar* v. *Bridges*, 3 Hum., 565, is, in principle, directly in point, and conclusive of the correctness of the Chancellor's decree sustaining the demurrer in this case. Says the Court in that

case: "Averments of fraudulent intention and fraudu-
lent combination are made with sufficient liberality
throughout the bill, but no fraud is shown to dis-
tinguish this case from any other in which a party
neglects or refuses to comply with his engagements
and to pay for the property he purchases. The
prayer of the bill is that the deed be canceled.
Bridges has demurred to the bill, and his demurrer
has been allowed by the Chancellor. His decree must
be affirmed. Fraud, indeed, vitiates a contract into
which it enters, but mere noncompliance with the
terms of a contract, in not paying the stipulated
consideration, is not fraud. If a party conveys his
land by deed upon a promise that he shall be paid,
it will not authorize the cancellation of the deed in
chancery by the mere allegation of fraudulent in-
tent."

It is another elementary principle as to rights
and remedies, that some wrong or hurt must have
been done from which relief must spring. The
hurt here is purely speculative. Had defendants con-
tinued in business, and continued to purchase from
complainant, profits to plaintiff would have been uncer-
tain and purely speculative. The relief here prayed,
though different, is analogous in principle to claim
of damages for breach of contract. In such cases
such damages cannot be recovered, because incapable
of accurate estimation.

We have examined the cases referred to by learned
counsel for complainants, and especially the case of

*Cross* v. *McKee*, 53 Miss., 538, and, without review-
ing these cases in detail, we think that each one of
them may be differentiated in some important and
material fact and principle from this case at bar.

It is an elemental principle, as applicable to re-
scission of contract or settlement, by fraud or other-
wise, that upon rescission the parties must be put
in *statu quo*, and independent of the mere question
whether the repayment of this five hundred and
sixty-five ($565) dollars will be a prerequisite, there
are other facts shown by the bill which demonstrate
that the parties could not be restored to the *status
quo* in which they were when this compromise was
made. It is shown, after compromise and settle-
ment of this debt was made, that the trustee had
wound up his trust, and, after winding up his trust,
had turned over the balance of the property of A.
W. Schevenel & Co. in his hands to that firm, and
that they have dissolved, and one of the partners,
not sued in this action, has removed to the State
of Arkansas, and they are each now in separate
business. It would be impossible, from this account,
to restore the parties or the assets of that firm
into the hands of the trustee.

There is still another principle applicable to the
denial of relief to the complainants in this case·
This compromise and settlement was made March 1,
1898. This bill was not filed until January 12,
1899. The complainants must have known, long
before this bill was filed, that this firm had ceased

to do business and had gone out of existence, and yet they waited to see whether or not these notes would be paid. It is incumbent, in such case, that the party seeking repudiation shall do so at once upon learning the ground upon which the rescission is ultimately based. "It is a settled rule that the right to rescind a contract for fraud must be exercised immediately upon its discovery, and that any delay in doing so, and the continued employment, use, and occupation of property received under a contract, will be deemed an allegation to confirm it." *Shiffer* v. *Dietz*, 83 N. Y., 300.

"A party who desires to rescind, in whole or in part, a transaction of this kind, must, upon the discovery of fraud, repudiate it, and cannot, after acquiescing in its ratification, avail himself of such defense." *Kerns* v. *Perry*, 48 S. W. Rep., 729; *Woodfolk* v. *Marly*, 98 Tenn., 467; *Grimes* v. *Sanders*, 93 U. S., 62.

The settlement of this first question of necessity settles the other. The conveyance to the wife was, in fact, before the indebtedness to the complainants. It was, at any rate, registered before this compromise settlement, and this is conclusive against the complainants' right to set it aside now. Besides, there are no sufficient allegations in the bill upon which to base a decree setting aside this as a fraudulent conveyance.

"A Court of Equity will not exercise its jurisdiction to release property applicable to the payment

of these debts, unless the debts are clear and undisputed, and there exists some special circumstances requiring the interposition of the Court to obtain possession of and apply the property." *Public Works* v. *Columbia College*, 17 Wallace, 521.

The decree of the Chancellor is confirmed, with costs to the complainant.