TOMMY W. CHRISTIAN, JR., et ux., Complainants-Appellants, v. PAN AM SOUTHERN CORPORATION and E. J. DIEFENBACH, Defendants-Appellees. — 309 S. W. (2d) 378.

Eastern Section. October 22, 1957.

Petition for Certiorari denied by Supreme Court January 6, 1958.

Moon, Anderson, Harris & Dineen, Chattanooga, for E. J. Diefenbach, defendants-appellants.

Hargraves & Hargraves and Atchley & Atchley, Chattanooga, for complainants-appellees.

Geo. H. Armistead, Jr. and Chas. L. Cornelius, Jr., Nashville, for Pan Am Southern Corp.

HALE, J. This case turns upon this question: Does the fraudulent material alteration of a written instrument extinguish the consideration for which it was given? The Chancellor ruled it did not. The parties aggrieved, Christian and wife, have appealed.

Prior to February 25, 1955, complainants Tommy W. Christian, Jr., and wife, Juanita Christian (hereinafter called Christians) owned a filling station on Brainerd Road in Chattanooga. When they acquired it, there was resting thereon a lease held by Pan Am Southern Co. (hereinafter called Pan Am), dated March 15, 1946, for the term expiring June 30, 1956, but containing a provision for optional extensions for ten one-year periods. This was recognized by Christians as valid, even though it was executed by only one of the tenants in common who were their predecessors in title.

Pan Am in turn subleased this property to E. J. Diefenbach, as Dee Oil Company (hereinafter called Diefenbach), who in turn leased it back to Christian, who was to operate it.

Some time before February, 1955, the parties began negotiations for a new lease to supplant that of March 15, 1946. They agreed upon one for ten years from June

1, 1955, at a monthly rental of $225, plus one cent per gallon on all gasoline sold in excess of 22,500 per month. There was also a provision for extended periods and option to purchase, neither of which is material to this case.

Pan Am and Diefenbach had insisted that Christians make certain improvements and repairs costing $3,000, but Christians refused to so agree, although Diefenbach agreed to advance a substantial part of this cost.

On February 25, 1955, Christians signed this lease, which had been prepared by Pan Am's agent and representative. It contained no provision for repairs. It was then turned over to Pan Am's agent to get the approval of the Home Office in New Orleans. It was not until the following August that Christians got their approved copy back, when they discovered there had been added to it the following clause:

"14. The Lessor hereby agrees to erect or make certain improvements which includes the installation of Mirawal, to cost approximately Three Thousand ($3,000.00) Dollars and no rent shall be due from the Lessee hereunder unless and until said improvements shall be completed and delivered to Lessee."

In the meantime, and on May 31, 1956, the lease of March 15, 1946, was cancelled by "mutual agreement", effective May 31, 1955, the day prior to the effective date of the new contract. This cancellation was evidently due to the execution of the new contract.

When Christians discovered the lease had been materially altered so as to contain the above clause, they immediately contacted an attorney and had him write

Pan Am. Being unable to get any settlement, they filed their bill in this cause to declare the new lease "null and void" as having been materially altered. Pan Am and Diefenbach were made defendants.

Pan Am answered, taking the position that clause 14, supra, was in the contract at the time it was signed by Christians, and filed a cross-bill asking, "In the event the Court should hold that the 1955 lease is wholly invalid * * * that a decree be entered reinstating the 1946 lease * * *". Later, an amendment was made to the cross bill asking that if such lease of February 25, 1955, was found to have been "altered after it was executed by complainants, that a decree be entered reforming the instrument and eliding the alteration which complainants claim was made * * *"

There is no defense that such alteration was innocently made or by any one other than Pan Am.

Diefenbach answered, asserting clause 14 was in the contract when it was signed by Christians.

Trial by jury was had. The sole question submitted was whether or not said clause was in the contract when signed by Christians. To this the jury answered "No". This was approved by the Chancellor and is not questioned on this appeal.

The decree provides that the lease of February 25, 1955, "is invalidated and of no effect", but the lease of 1946 "is reinstated and the recorded lease of same is declared a nullity". Pan Am was given the rights to the renewal periods contained in the 1946 lease.

The learned Chancellor's reasoning and authority for this action was stated by him as follows:

"It is undisputed that the release of the 1946 lease, by mutual consent, formed a part of the consideration for cancelling that lease before maturity, so as to permit the new lease to become effective in 1955. In setting aside the 1955 lease, the lessor is required to surrender or return to the lessee the consideration received for entering into the agreement. It would be a gross injustice to allow the party not in default to obtain the benefits of rescission or cancellation and at the same time retain all other benefits. Hill v. Harriman, 95 Tenn. 300-305 [32 S. W. 202]; Life & Casualty Ins. Co. v. Mitchell, 14 Tenn. App. 409-420; Spivey v. Roadman, 6 Tenn. App. 442-446; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 644-645 [266 S. W. 313]; Curtis v. Brannon, 98 Tenn. 153-161 [38 S. W. 1073, 69 L. R. A. 760]; A. Landreth & Co. v. Schevenel, 102 Tenn. 486, 492 [52 S. W. 148].

Gibson, 5th Ed., Sec. 994, Rescission, p. 235:

" 'On a bill for rescission the complainant must tender whatever consideration he may have received, if any, and offer to do whatever is necessary to place the defendant in statu quo.'

"In Aiken v. Suttle, 72 Tenn. 103-124, dealing with rescission, the Court said,

" 'In Wright v. Dufield, 2 Baxt. [218] 222 [61 Tenn. 218], the following language was used:

" ' ''On the rescission of the sale, it is the settled practice in this State to require the vendor, as incident to the relief granted him, to restore the purchase money he has received, and the amount paid upon the purchase will be held a lien upon the land, even against a lunatic or a married woman.'' It was

added: "The vendor is bound, upon an immutable principal of natural justice, to refund the purchase money, before being entitled to demand back the property sold." *And it was said that "the mere effort to avoid the contract without restoring the purchase money, is itself a fraud which will not be permitted." ' "*

Other authorities to the same effect are quoted by him. This principle is sound but we do not think they apply to a case involving fraudulent material alterations.

The case of Columbia Grocery Co. v. Marshall, 1914, 131 Tenn. 270, 174 S. W. 1108, is squarely in point. A debtor gave his creditor a series of eleven notes of differing amounts and maturities. After execution and delivery the creditor inserted an acceleration clause. Suit on the notes was dismissed because of this alteration. Thereafter the creditor sued on the account for which the notes were given. The Chancellor allowed a recovery. On appeal the court, 131 Tenn. at pages 277 et seq., 174 S. W. at page 1110, said:

"The modern rule, as expressed in many authorities touching this whole question, may be stated as follows: The intent with which an alteration of an instrument is made is not of material consequences in determining the effect upon the immediate instrument, but the intent or motive is of great importance in determining whether a recovery can be had upon the original debt or consideration.

"If the alteration of a written instrument is made by the holder with a design and intent to defraud the maker, it extinguishes the debt. This rule is founded on public policy, and in order to preserve

the integrity of valid legal instruments, by providing a punishment for the wrong, and to deter the holder from tampering with it. If, however, the alteration is without fraudulent intent, while it will destroy the instrument, it will not destroy the right to recover on the original consideration, of which the instrument is a mere evidence. Thus, if a holder of a promissory note makes a material alteration in it after its execution but without any design to defraud, and in the belief that he had a right to alter it in order to make it conform to the original agreement of the parties, such alteration does not deprive the holder of the right to elect to disregard the note and to sue on the original obligation, provided the note was not accepted as payment thereof. White v. Hass, 32 Ala. 430, 70 Am. Dec. 548; Vogle v. Ripper, 34 Ill. 100, 85 Am. Dec. 298; Wheelock v. Freeman, 13 Pick., Mass. 165, 23 Am. Dec. 674; Greenfield Sav. Bank v. Stowell, 123 Mass. 196, 25 Am. Rep. 67; Walton Plow Co. v. Campbell, 35 Neb. 173, 52 N. W. 883, 16 L. R. A. 468; Wolferman v. Bell, 6 Wash. 84, 32 P. 1017, 36 Am. St. Rep. 126; Warder, Bushnell & Glessner Co. v. Willyard, 46 Minn. 531, 49 N. W. 300, 24 Am. St. Rep. 250, and note; Green v. Sneed, 101 Ala. 205, 13 So. 277, 46 Am. St. Rep. 119; Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56, and note.''

American Jurisprudence, Vol. 2, Alteration of Instruments, Sec. 36, p. 623, has a very full discussion of the rule and exceptions thereto. It follows:

''While the intent or motive with which a material alteration in an instrument was made is of little or no moment in determining the effect of such alteration on the instrument, yet the intent or motive

prompting the change may be of the greatest importance in determining whether the right of recovery upon the original consideration for which the instrument was given is affected by the alteration. The rule as to the vitiating effect of material alterations in written instruments is one founded in public policy, and in order to preserve the integrity of legal instruments by taking away the temptation to tamper with them, the law goes still further, and, where there is any fraudulent intent or purpose in making the alteration, forbids the party responsible for such change to recover on the original consideration. To allow one who has designedly made a material alteration in an instrument to recover on the original consideration would be to depart from the sound and just principle that no one shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected. If, however, the alteration of the instrument was without fraudulent intent, the instrument itself is invalidated thereby, but the right to recover on the original consideration remains. Although the identity of the instrument may be destroyed, it will not operate to cancel the debt of which the instrument is merely evidence. For instance, where the taking of a promissory note does not extinguish the original debt or operate as payment, the alteration of it by the payee after delivery and without the maker's consent, if without frauduent intent, will not preclude him from recovering on the original demand. This right to sue on the original indebtedness, under the rules above stated, is not cut off by the making of an unsuccessful attempt to recover on the altered instrument.''

362

3 C. J. S. Alteration of Instruments sec. 11, p. 916, has this to say:

> "The rule permitting a resort to the original indebtedness is confined to cases in which the alterations are made without fraud in fact. If one voluntarily and fraudulently thus destroys the agreed evidence of his debt, he cannot resort to the original consideration, because he will not be allowed to supply the place of the destroyed evidence by other evidence. Accordingly, where a promissory note is materially and fraudulently altered by the payee, not only is the instrument vitiated thereby, but also recovery against the maker on the original consideration is barred."

In an annotation to 127 A. L. R., beginning at page 343, it is said:

> "Hence, the rule which seems to prevail in most jurisdictions is that where a note is given for a precedent indebtedness, which is not extinguished by, but which exists independently of the note, a material, fraudulent alteration of the note by the payee will not only vitiate the note, but will preclude the payee from any recovery against the maker on the original consideration."

This is supported by citations from the large number of jurisdictions, including the Columbia Grocery Co. case before mentioned.

Beyond any doubt the insertion of clause 14 was a fraud in fact. It compelled Christians to expend $3,000 for repairs which they refused to make, due to pressed financial circumstances, and provided for withholding

of rentals until these repairs were made. The parties had agreed on a lease without this clause. After the lease was signed it was delivered to Pan Am's representative who was handling the matter. While we have a suspicion that it was afterwards placed in the contract at the insistence of Diefenbach, who had been insisting upon its inclusion in the lease, the fact remains that it was written therein by Pan Am's representative after it was signed by Christians. And as previously indicated, there is no pleading or proof that Pam Am was acting innocently. It insisted all along that this clause was in the lease when it was signed by the lessors. It is of some interest that Diefenbach procured his son-in-law, a notary, to execute a false certificate of acknowledgement to this lease.

It would never do to let a party to a contract fraudulently alter it and then, when caught, fall back on the original consideration. A crook would have everything to gain and nothing to lose.

It results that the decree below is reversed and a decree entered here in favor of appellants, cancelling the 1946 lease. The cause will be remanded to the Chancery Court in order to ascertain the reasonable rental value of the filling station from June 1, 1955.

What we have said makes it unnecessary to discuss seriatim the assignments of error filed by Christians.

Cost against appellees.

Reversed. Decree here for Christians. Remanded to ascertain rentals.

McAmis, P. J., and Howard, J.