ROBERT F. FITZGERALD, Assignee, v. STATE BANK OF DULUTH.[1]

May 21, 1896.

Nos. 9858—(73).

**Bank—Deposit—Estoppel to Set Off Claims.**

> S. & Co. being an insolvent mercantile firm, a meeting of the principal creditors was called, at which the cashier of defendant bank—a creditor—presided, one of the firm being present. It was there agreed that one A. W. Miller should be given entire control of the business pending the return of the senior member of the firm from Scotland, where he had gone for the purpose of raising money for the use of the concern. Miller was to dispose of the stock on hand, collect debts, purchase and pay for such goods as might be necessary for carrying on the business, and was to deposit all moneys as received in two banks, one being the defendant, such moneys to be deposited in the name of "A. W. Miller, Agent." It was agreed that he should not pay out any money upon the then existing indebtedness of the firm. Miller proceeded under this arrangement until the senior member returned, and then the firm made an assignment under the laws of this state for the benefit of all its creditors. *Held*, in an action brought by the assignee against the bank to recover the amount of the deposit, that the latter was equitably estopped from offsetting, as against the deposit, notes of the firm held by it.

**Same—Directing Verdict.**

> *Held*, also, that upon the state of the evidence at the close of the trial the court below was justified in ordering a verdict for plaintiff for the amount due on deposit account.

Appeal by defendant from an order of the district court for St. Louis county, Moer, J., denying a motion for a new trial. Affirmed.

*Schmidt, Reynolds & Mitchell*, for appellant.

*Wm. A. Cant* and *Walter Ayers*, for respondent.

COLLINS, J. The facts surrounding the transaction herein involved were briefly stated by the official reporter when reporting the case of Miller v. State Bank of Duluth, 57 Minn. 319, 59 N. W. 309, in which case this court determined that the assignee of Simon Clark & Co. was the proper party to bring the action. Thereupon plaintiff, as such assignee, commenced this action, a jury trial was had,

[1] Reported in 67 N. W. 361.

and at the close of the testimony the court directed and the jury returned a verdict against defendant for the full amount of the deposit.

On the trial there was but little dispute over the facts, and especially as to what occurred at the creditors' meeting in March, 1893. At that meeting the defendant bank, one of the principal creditors of the embarrassed firm, was represented by its cashier, who acted as chairman, and was evidently very prominent and active in calling the creditors together, and in securing their consent, as well as the consent of the only member of the firm who was present, to the scheme finally adopted, by which Mr. Miller was placed in control of the firm business, pending Mr. Clark's absence in Scotland, with full authority to manage the business, to dispose of goods on hand, to push collections, to accumulate and deposit firm moneys, and to purchase and to pay for such goods only as were absolutely needed to carry on the business. The evidence as to what was said and done at this meeting conclusively showed that the plan was devised and adopted as a method of preventing the giving of a preference to one or more of the creditors and to postpone an assignment until Clark should return with funds, it was hoped, sufficient to relieve the existing complications, and to restore confidence among the creditors, one having already brought an action against the firm. Stated concisely, the agreement was that, if Mr. Miller was put in charge, the firm affairs could and would remain in statu quo until Clark returned. And they did, for nothing was done by any of the creditors until Clark came back without having accomplished his mission, and the creditor mentioned entered judgment in the action. This precipitated the assignment.

At the trial the cashier of defendant bank did not attempt to contradict directly the testimony we have spoken of. He was more or less evasive in his answers, and only became positive when questioned concerning an agreement, said by other witnesses to have been entered into, that, should an assignment become necessary, moneys then in the hands of Miller should be turned over to the assignee. This he denied unequivocally. But he admitted that at his own suggestion Miller was practically instructed to deposit all moneys received by him in two banks,—one being the defendant,—and that he was to pay out nothing on the existing claims or accounts. And

he further stated that at his own suggestion, and for the purpose of complicating matters, should any of the creditors attempt to garnish, and to prevent garnishment of the 'funds while in the bank, it was agreed that all moneys should be deposited to the credit of "A. W. Miller, Agent," and this accounts for the peculiar manner in which the deposit was made.

This testimony indicates quite clearly what the understanding was in reference to such funds as might come into Miller's hands and remain there after he had made the disbursements agreed on. It goes far towards establishing the plaintiff's claim that there was either an express or an implied agreement that surplus funds were to be kept intact until the happening of one of two events,—one, the return of Clark with money with which to put the concern on its feet; the other, the assignment, which was inevitable should he return without money. We consider it as conclusively established that this was the agreement either expressly or impliedly entered into at the creditors' meeting, and that the money was deposited in defendant bank in pursuance thereof, and for the purpose of being kept until Clark's return, and then to be turned over to the firm, or to go to the assignee. It was in the nature of a special deposit for a well-understood purpose and object. Certainly good faith and fair business dealing require that the amount of this deposit shall not be so diverted as to give a party to the agreement a preference over other creditors.

So the question is whether the law will permit the bank which received the money under such circumstances to set off notes held by it against the insolvent firm to the amount of the deposit, and thus indirectly obtain a preference. If this could be done, the plainest principles of equitable estoppel would be disregarded, for undoubtedly the acts and conduct of the cashier, when present at and presiding over the meeting, influenced other creditors, and they were of such a character that to allow the bank to now repudiate them, or any part of the transaction, and to appropriate the amount of the deposit in part satisfaction of its notes, would be rank injustice, necessarily resulting in injury to the creditors who participated in the meeting and in the agreement, as well as to all other creditors of the insolvent firm. The money acquired by Miller belonged to all of the creditors, and the nature of the agreement under which Miller

obtained and placed it in defendant's custody shows that the cashier understood and recognized the fact. The bank cannot now dispute the right of the assignee to the money.

Order affirmed.