Grocery Co. v. Marshall.

COLUMBIA GROCERY COMPANY v. MARSHALL.*

(*Nashville*.   December Term, 1914.)

1. PAYMENT.  Payment by note.  Intent.

The taking of the note of a debtor does not extinguish the original
    debt, nor operate as a payment, unless so intended or agreed
    between the parties, though it may extend the time of payment;
    and if for any reason, without fraud, the creditor loses his
    right to sue on the note, he may sue on the original indebted-
    ness.   (*Post, p.* 275).

Cases cited and approved:    Pollak Bros. v. Niall-Herin Co., 137
    Ga., 23; Otto v. Halff, 89 Tex., 384; Pigot's Case, 11 Coke, 27a.

2. ALTERATION OF INSTRUMENTS.   Materiality.

An immaterial change by whomsoever made, at least when un-
    accompanied by fraudulent design, will not invalidate an in-
    strument, nor will a material change by a stranger avoid it.
    (*Post, pp.* 275-277.)

Cases cited and approved:.  Kennel v. Muncey, Peck, 273; Nichol
    v. Thompson, 9 Tenn., 155.

3. ALTERATION OF INSTRUMENTS.   Effect.   Intent.

The intent with which an instrument is altered is immaterial
    in determining the effect upon the immediate instrument, but
    is important in determining whether a recovery can be had
    upon the original debt or consideration.  (*Post, pp.* 277, 278.)

4. ALTERATION OF INSTRUMENTS.   Notes.   Effect.   Extin-
    guishment of debt.

A debtor executed a series of eleven notes falling due each two
    months, there being no apparent intention at the time that they
    should extinguish the creditor's original demand for payment
    of goods sold, and the creditor thereafter wrote in each note
    a clause to the effect that it was one of a series, and that, on

---

*The authorities on the question of payment by commercial
paper are collated in an extensive note in 35. L. R. A. (N. S.), 1.
    For alteration as affecting the question whether commercial
paper operates as payment of the debt, see note in 35 L. R. A.
(N. S.), 76.

Grocery Co. v. Marshall.

default in payment of any note, all became due and payable, without notice to the debtor until he called to make the first payment, which insertions destroyed the whole advantage the debtor had gained by closing the account and substituting the notes so as to relieve him of financial embarrassment. *Held*, that such act was a constructive fraud or attempt to gain an advantage over the debtor, and not only destroyed the notes but also extinguished the account for which they were given, though, if the alteration had been without fraudulent intent, it would have destroyed the note, but not have extinguished the account. (*Post, pp.* 278-280.)

Cases cited and approved: White v. Hass, 32 Ala., 430; Vogle v. Ripper, 34 Ill., 100; Wheelock v. Freeman, 13 Pick. (Mass.), 165; Greenfield Sav. Bank v. Stowell, 123 Mass., 196; Walton Plow Co. v. Campbell, 35 Neb., 173; Wolferman v. Bell, 6 Wash., 84; Warder, etc., Co. v. Willyard, 46 Minn., 531; Green v. Sneed, 101 Ala., 205; Otto v. Halff, 89 Tex., 384.

---

## FROM MAURY.

---

Appeal from the Chancery Court of Maury County. —W. S. BEARDON, Chancellor.

J. S. COFFEY and W. S. FLEMING, for appellant.

PEEBLES & FORGEY and W. R. PEEBLES, for appellee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

The case was brought to collect on an open account. Notes had been executed by defendant covering the account but materially altered by complainants. The

case involves the question as to whether suit can be maintained on the original account.

The Columbia Grocery Company is a partnership composed of Mose and Ben Lazarous, doing a wholesale grocery business at Columbia, Tenn. Defendant O. M. Marshall was a retail merchant at Campbell's Station, in Maury County, and for several years had purchased goods of the complainants, and a running account had existed for considerable time. Complainants sold this business and desired to close out their accounts. They urged defendant to pay his indebtedness, and he disputed a large part of the account. After some considerable dispute about this, he finally agreed to give his interest-bearing notes, which he did, covering the account of $1,073.78 and $45 of interest. The notes were eleven in number, bearing date February 2, 1914 —nine for $75 each, and one for $200, and another for $242.88. One note fell due each two months during the years 1914 and 1915. The notes were prepared by complainants some days before execution and handed to defendant. They were actually executed February 21st and delivered to complainants. That evening Ben Lazarous discovered that the bookkeeper had left out a clause they usually inserted in serial notes of this character, and they had it filled in with a typewriter on each note; the first being as follows:

"This is note one of a series of eleven, default in payment of any note of this series all notes become due and payable."

Defendant's attention was not called to this altera-
tion.  The notes were then put in a box with other
notes and papers and placed in the vault in the bank for
safe-keeping.

Complainants say it was not their intention to keep
these notes, but this is hardly to be credited, for they
did keep them after voluntarily making the unauthor-
ized change until it was discovered by defendant about
seventeen days after the execution.  He had called to
pay the first note, and, when the note was produced,
he noticed the typewritten alteration, and thereupon
refused to pay.  He was urged to pay notwithstanding,
and, upon refusal, Mose Lazarous says that he pro-
posed that they would destroy the notes and let the
account stand.  Some days afterwards the complain-
ants mailed to the defendant all the notes.

It was customary for the bookkeeper to write this
clause into notes of this character, and some notes had
been so fixed after their execution, in other instances.

This suit was brought to recover on the original
account.  The defendant resists a recovery on the
ground:

First.  That the notes were intended and did ex-
tinguish the original indebtedness, being taken in set-
tlement and closing out of the account; and that, the
notes being void because of the alteration, no recov-
ery can be had.

Second.  That, the alteration being fraudulently
made, no recovery can be had, regardless of whether
the original account was extinguished.

131Tenn18

The chancellor ·dismissed the bill on the trial.   He found in a memorandum opinion that "it seems clear from the statement of complainants that the notes were given and received in settlement of the account," and that "taking and holding the notes and putting in box and vault in bank with other valuable papers, and failure to notify Marshall by mail or phone promptly, unerringly point to the conclusion that it was in legal effect acceptance."   He concluded also that the proof repels intentional or purposed fraud or deceit, but it changed the contract materially as to the rights and obligations of defendant.   He said further:

"This might be mildly termed constructive fraud, and, if so, that like any species of fraud, would defeat suit on original consideration; but, if notes operated as payment or extinguishment of account, no sort of fraud would be necessary to have same effect."   1 Ruling Cas., 1006.

He also cited 1 Ruling Cases, p. 966.

The chancellor also said:

"The insertions were made innocently and in accordance with complainants' custom, but not to conform to any negotiation or contract between them and defendant, as the proof clearly shows.   Unwittingly and with no evil purpose they changed or caused to be changed the contract to their advantage, thereby made the notes more valuable to sell or hypothecate, or as choses to own and hold with the additional right secured by the insertions and additions."

He concluded:

"The law, based on public policy, especially as to commercial paper, seems to provide no *locus penitentiae,* for like faults or errors, but to be inexorable and penal. See *Pollak Bros.* v. *Niall-Herin Co.,* 137 Ga., 23, 72, S. E., 415, 35 L. R. A. (N. S.), 76."

From a review of the authorities, we are of opinion that the weight of authority is as follows:

That the taking of a promissory note of a debtor does not extinguish the original debt, nor operate as a payment, unless so intended or agreed between the parties, though it may extend the time of payment, and if for any reason without fraud the creditor loses his right to sue on the note, he is at liberty to sue on the original indebtedness. 2 Cyc., 183, citing *Otto* v. *Halff,* 89 Tex., 384, 34 S. W., 910, 59 Am. St. Rep., 56, and notes, and many other authorities.

The early doctrine on this subject applied to deeds, because anciently most transactions which were reduced to writing were evidenced by instruments under seal, and an immaterial change made by the obligee, or in a material point if made by a stranger, avoided it. Pigot's Case, 11 Coke, 27a, and other authorities cited in 2 Cyc., p. 175.

But now this early doctrine is nowhere adhered to, and is superseded by a more reasonable doctrine that an immaterial change, by whomsoever made, at least when unaccompanied by fraudulent design, will not invalidate the instrument, and that a material change by a stranger will not avoid it. This doctrine applies

to all written contracts, especially commercial paper. 2 Cyc., 175-177.

The early cases in Tennessee on the subject of alteration of instruments, of which *Kennel* v. *Muncey*, Peck, 273 (opinion by Judge Haywood), is a leading case, held that a sealed instrument extinguished the precedent demand on which it was founded; but in the case of an unsealed instrument, though any alteration made without the assent of the maker after its execution vitiated it, yet recovery might be had on the original obligation. *Kennel* v. *Muncey*, Peck, 273; *Nichol* v. *Thompson*, 1 Yerg., 155.

The latter opinion was by Judge Catron, and he stated the reason why an unsealed promise to pay does not extinguish or merge a parol contract to pay a previous debt was because they are of equal grade in the scale of evidence and subject to be defeated by countervailing proof.

It does not clearly appear in the present case that there was an intention, at the time these notes were executed, that they were to settle and extinguish the original demand for goods, wares, and merchandise sold and delivered. And the modern rule being that this intention must appear or else the creditor can sue upon the original debt when he loses his right innocently or without fraud, we reach the conclusion that the case must turn alone on whether the complainants have lost that right on account of their own wrongs. We think the chancellor correctly found that the notes were accepted by the complainants.

The question in the case then is:  What is the degree of the wrong or the effect of the material alteration made in each of these notes?

Very able and exhaustive briefs have been furnished on the questions involved, and we find no material difference in the position of counsel either as to the facts or the law.  It is the conclusion from the facts upon which counsel differ.  The complainants maintain that these insertions in the notes were made innocently and in accordance with complainants' custom, and do not affect the right to sue on the original debt.

The defendant says that though he did not owe the complainants as much as they claimed in order to get time, and prevent them from closing him out in business, he gave these notes; that the insertion of a stipulation after delivery, without his assent or knowledge, that default in the payment of any one note would cause all the notes to become due and payable, was a material change in the contract; that such a change, which the chancellor mildly termed constructive fraud, was in reality an intentional and subtle fraud and deception, for which the punishment will be inflicted to the extent that they will lose their right to sue on the original contract.

The modern rule, as expressed in many authorities touching this whole question, may be stated as follows: The intent with which an alteration of an instrument is made is not of material consequences in determining the effect upon the immediate instrument, but the intent or motive is of great importance in determining

whether a recovery can be had upon the original debt or consideration.

If the alteration of a written instrument is made by the holder with a design and intent to defraud the maker, it extinguishes the debt. This rule is founded on public policy, and in order to preserve the integrity of valid legal instruments, by providing a punishment for the wrong, and to deter the holder from tampering with it. If, however, the alteration is without fraudulent intent, while it will destroy the instrument, it will not destroy the right to recover on the original consideration, of which the instrument is a mere evidence. Thus, if a holder of a promissory note makes a material alteration in it after its execution but without any design to defraud, and in the belief that he had a right to alter it in order to make it conform to the original agreement of the parties, such alteration does not deprive the holder of the right to elect to disregard the note and to sue on the original obligation, provided the note was not accepted as payment thereof. *White* v. *Hass*, 32 Ala., 430, 70 Am. Dec., 548; *Vogle* v. *Ripper*, 34 Ill., 100, 85 Am. Dec., 298; *Wheelock* v. *Freeman*, 13 Pick. (Mass.), 165, 23 Am. Dec., 674; *Greenfield Sav. Bank* v. *Stowell*, 123 Mass., 196, 25 Am. Rep., 67; *Walton Plow Co.* v. *Campbell*, 35 Neb., 173, 52 N. W., 883, 16 L. R. A., 468; *Wolferman* v. *Bell*, 6 Wash., 84, 32 Pac., 1017, 36 Am. St. Rep., 126; *Warder, etc., Co.* v. *Willyard*, 46 Minn., 531, 49 N. W., 300, 24 Am. St. Rep., 250, and note; *Green* v. *Sneed*, 101 Ala., 205,

13 South., 277, 46 Am. St. Rep., 119; *Otto v. Halff*, 89 Tex., 384, 34 S. W., 910, 59 Am. St. Rep., 56, and note.

There is some authority that although the alteration be material and fraudulent, since a bill or note suspends and is not absolute payment of the debt for which it was given, such alteration only extinguishes the security, and the original consideration remains, but this is not sound doctrine. The correct rule undoubtedly is that, when a party to a bill or note fraudulently alters its legal effect, he not only destroys the instrument, but he also extinguishes the debt for which it was given. Daniel on Negotiable Instruments, vol. 2, secs. 1410 to 1416.

We think the chancellor very midlly termed this act of the complainants a constructive fraud. It was more than that. It was not made in an innocent effort to conform the instrument to the true intention and agreement of the parties or through ignorance, or any other simple, guileless motive. It was a secret and stealthy attempt to gain an advantage. The defendant says that he would not have executed the papers with stipulations that, in the event of default of one, all would become due and payable, and it is reasonable to believe he would not. He was attempting to get a breathing spell between payments so he could meet them, one by one, through a period of two years. His wife had been sick in the hospital, and he was embarrassed financially. His debts were pressing him. These insertions in the notes destroyed the whole advantage he had gained by closing the account and substituting

time notes, if he should be so unfortunate as to fail in one small payment. He went to make a payment before it was due and discovered the change, and thereupon promptly refused to pay.

The law on the subject is founded on wise public policy, and we are not at liberty to disregard it.

Affirmed.