# CHARLESTON.

## D. E. LUTZ v. J. E. WILLIAMS *et al.*

Submitted February 6, 1917.   Decided February 13, 1917.

1. PRINCIPAL AND AGENT—*Personal Liability of Agent.*
   An agent of a disclosed and known principal, conducting a checking account in a bank, in his own name, creating an overdraft therein and executing his own checks on another bank to make the overdraft good, makes himself individually liable to the bank. (p. 614).

2. NOVATION—*Personal Liability of Agent—Election to Hold Principal.*
   In such case, the doctrine of discharge of the agent by election to hold the principal for the debt, does not apply; and subsequent acceptance by the bank of notes of the principal for the debt and collateral security therefor, does not release the agent.   (p. 614).

3. SAME.
   A contract between the principal and the bank, to which the agent is not a party, reciting acceptance of the notes and securities, the agency and the indebtedness of the principal, but not releasing the agent nor, in terms or by implication, making the notes payment of the debt, does not effect a novation of the debt. (p. 614).

4. PRINCIPAL AND SURETY—*Relation of Parties—Individual Liability.*
   The contracts being separate in such case, there is no suretyship relation between the principal and agent, imposing duty upon the bank in its transactions with them.   (p. 614).

5. BANKS AND BANKING—*Depositors—Debts of.*
   A bank to which a depositor owes a matured debt may appropriate a general deposit of the debtor to payment of the debt; but it has no right so to appropriate or apply a deposit made by the debtor for a known special purpose, or under a special agreement that it may be checked out or withdrawn for specific purposes. (p. 614).

6. GARNISHMENT—*Property Subject to Special Deposits.*
   A special deposit in a bank is subject to garnishment.   (p. 614).

7. SET-OFF AND COUNTERCLAIM—*Right of Set-Off—Relinquishment.*
   The statutory right of set-off may be waived or relinquished by an agreement founded upon a valuable consideration, and such an agreement may be implied as well as expressed.   (p. 616).

8. BANKS AND BANKING—*Special Deposits—Agreement.*

By its acceptance of a special deposit, a bank impliedly binds itself not to set-off against it, a debt due it from the depositor. (p. 616).

9. GARNISHMENT—*Proceedings—Pleading.*

In a proceeding by suggestion, no formal pleadings are required. The broad issue is whether the garnishee owes the judgment debtor anything or has in his possession any property belonging to him. (p. 616).·

Error to Circuit Court, Randolph County.

Action by D. E. Lutz against J. E. Williams and others. There was judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*Samuel T. Spears, A. M. Cunningham* and *Neil Cunningham,* for plaintiff in error.

*Arnold & Arnold* and *W. B. Maxwell,* for defendants in error.

POFFENBARGER, JUDGE:

The substantial parties to this action are the plaintiff, Lutz, and the Peoples National Bank of Elkins, a garnishee, claiming the fund in controversy. On the issue duly made between them, there was a verdict in favor of the garnishee, rendered under an instruction from the court, and judgment was entered accordingly. Having a judgment against J. E. Williams for the sum of $591.66 and believing the bank to be indebted to him in the sum of about $1,500.00, for money deposited with it, the plaintiff proceeded against the bank by a suggestion based upon his execution. The bank founded its defense upon a claim of right to apply the deposit upon an alleged indebtedness from Williams to it, and this defense was resisted upon the ground that the indebtedness due the bank was not that of Williams, the depositor, but of one Edwin Kelton for whom Williams acted as agent at the time of the making of that indebtedness, and, as he claimed, in the making thereof, and also upon the ground of estoppel. At the conclusion of the evidence, the court refused several in-

structions requested by the plaintiff and gave one peremptorily requiring the jury to find for the bank.

The indebtedness for which the bank claims the deposit was incurred in November, 1909, and the deposit itself, the fund in controversy, was made in August, 1912. The latter sum represents the purchase money of certain timber severally sold by the plaintiff and six other persons to Williams and resold by him to the Virginia Timber Company. He bought without money, in his own right or as agent for the Virginia Timber Company, expecting to pay the purchase money out of the funds to be paid to him by the timber company, when the timber should be inspected and taken up. Early in August 1912, Williams received a draft from the timber company on some bank in Boston, for the sum of $1,247.06, which he deposited with the Peoples National Bank, taking a deposit slip therefor, in the form of a receipt, with the verbal understanding, however, he claims, that he should not check out the money it represented, until after payment of the draft. From August 5, to August 12, 1912, he drew ten checks against this deposit and a small amount of other money he had in the bank, only two of which, amounting to about $175.00, were paid. The draft seems to have been paid August 9, and on August 12, Williams was notified by a letter from the bank that the deposit had been credited upon his alleged indebtedness to the bank, created in 1909. Claiming to have acted, in the receipt of this money and the deposit of the draft, as the agent of the Virginia Timber Company, Williams, together with the payees of the checks, or some of them, brought a chancery suit against the bank, to compel payment out of the fund. Finding the timber company unwilling to acquiesce in this theory of the case, the chancery suit was dismissed. Then Williams confessed judgment in favor of the payees. This proceeding on Lutz's judgment is conducted under an agreement that the result thereof shall be binding upon the other six claimants of interests in the fund.

In the making of the debt of 1909, amounting to $5,562.12, three parties besides the bank were concerned, Edwin Kelton located at Columbus, Ohio, and professing to do a timber bus-

iness for himself and for his wife, as her agent, J. E. Williams located at Elkins, W. Va., and claiming to be a purchasing agent for Kelton, and one S. S. Leak whose location, business and place of residence are not disclosed by the record. Kelton seems to have done business in his own name, in a Columbus bank and in a bank at Roanoke, Virginia. Another account was carried in the name of Williams, in the Peoples National Bank of Elkins. The account in the last named bank seems to have commenced in 1909 and to have run until November, 1909, when a large overdraft occurred. From October 28, 1909, until November 9, 1909, Williams drew seven checks against his account in favor of Kelton, ranging from $486.32 to $615.32, in amount, and aggregating $3,694.61, and three in favor of S. S. Leak, aggregating about $2,200.00, all of which were paid by the bank. From November 5, 1909, until November 10, 1909, Williams deposited checks amounting to $7,335.42, all of which except three, amounting to about $1,750.00, were drawn by Kelton, and those so drawn were protested and never paid. On November 8, Williams drew his own check on the First National Bank of Roanoke, for the sum of $2,700.00, payable to J. T. Lingamfelter, cashier of the Peoples National Bank of Elkins, and, on November 9, 1909, one of like character for $1,485.00, both of which were also protested and never paid. These operations resulted in an indebtedness of $5,562.12 to the Peoples National Bank of Elkins, in the name of Williams.

Williams denies any fraud or bad faith in these transactions, insisting that Kelton was doing a timber merchandising business in good faith and that he represented him as agent therein, with the knowledge of the officers of the bank. They, the cashier and assistant cashier, do not deny that he represented himself to them as being such an agent, but the former strenuously denies that the bank dealt with him in his alleged representative capacity. Williams insists that the checks out of which the overdraft arose were drawn in the regular and usual course of the business, as conducted through the banks, and that the non-payment of Kelton's checks deposited by him, to cover his own, was due to Kelton's failure in business, and that the two large checks drawn

by him failed of payment for the like reason, the Roanoke bank refusing to furnish money on Kelton's notes to provide for them agreeably to its former practice.

On December 3, 1909, a contract was entered into between Edwin Kelton and Laura B. Kelton, his wife, and Edwin Kelton, Agent, parties of the first part and the Peoples National Bank of Elkins, party of the second part, reciting indebtedness of Kelton to the bank, in his own right and as agent, in the sum of $5,562.12; the desire of the parties of the first part to secure the payment thereof, and of the parties of the second part, upon being made secure in the payment thereof, to grant the first parties reasonable indulgence; the delivery to the bank of certificates of stock in a mining corporation for stock of the par value of $6,000.00, by Laura B. Kelton, in consideration of the premises, and delivery of stock of the same company of the par value of $4,000.00 and stock in the Great American Life Insurance Co. of the par value of $500.00, by J. E. Williams, described as agent of said Edwin Kelton, "for the purpose of assisting" him, all of which stock was to be held as collateral security; the conveyance of a tract of land to Richard Chaffey, the president of the bank and trustee, by the Keltons, as further security; and the execution of their six joint and several promissory notes to the bank, four of which were for $695.26 each, and the other two for $1,309.52 each, by Edwin Kelton and Edwin Kelton, agent. Williams is not described in the contract as a party to it and did not sign it. Though an officer of the bank says his signature thereto was requested, he denies the assertion and also all knowledge of the contract until long after it was made.

The facts and circumstances disclosed by the record do not bring the case within the doctrine of discharge of the agent by election to hold the principal. Williams testifies positively that the officers of the bank knew he was agent and Kelton principal. This they do not deny. Hence, Williams' transactions with the bank were not those of an agent for an undisclosed principal. Though the cashier of the bank says that institution had nothing to do with Kelton, until it made the contract of December 3, 1909, to which reference has been

made, he did not mean to say, and did not say, he had no knowledge of the relation of principal and agent between Kelton and Williams. In the same connection, he said he knew Williams was employed by Kelton. Fairly analyzed, his testimony merely insists that credit was given to Williams, without denial of knowledge of the relation.

It is uniformly held that an agent of a disclosed principal may bind both himself and the principal and that he does so when he enters into a contractual relation. *Sayer* v. *Edwards,* 19 W. Va. 352; *Church* v. *Manson,* 4 Rand. 197; *Strider* v. *Winch. & Pot. Railroad Co.,* 21 Gratt. 440; 31 Cyc. 1422; 1554; Clark & Skyles, Agency, sec. 566.

Williams not only conducted the account with the bank in his individual name, but also drew and signed checks, which being paid by the bank, created the overdraft. Though these checks no doubt lost the quality of negotiability, by reason of their having been paid by the bank, they are evidence of indebtedness on the part of Williams and prove a contract in his own name. Besides, he executed two large checks to the bank, in his own name, that have never been paid.

Nor did the contract of December 3, 1909, relieve Williams from the obligation so imposed. As he was not a party to it, and it did not deal with the question of his liability, it cannot be regarded as having effected a novation. His checks were not surrendered. The contract does not in terms release him, and there is no evidence in its terms or elsewhere, tending to prove it was taken in satisfaction or payment of the debt. The taking of collateral security from the debtor or a stranger does not effect a novation. *Yerby* v. *Lynch,* 3 Gratt. 460. Novation involves extinguishment of the old debt. *Chenoweth* v. *National Bldg. Ass'n.,* 59 W. Va. 563.

Although Kelton and Williams are held for the same debt, their obligations rest on separate contracts, wherefore there is no suretyship relation between them. Satisfaction by one would relieve the other and equities may arise between them, but these results are obviously not dependent upon that relation.

Williams' indebtedness to the bank, however, is not con-

clusive of the case, as the court seems erroneously to have assumed. A bank has not the right, under all circumstances, to apply its patron's deposit to the payment of his debt. It may, at any time, so apply a general deposit, but not a special one. In other words, if a bank holding a debt against a person, agrees to accept money on deposit and allow him to check it out for special purposes, notwithstanding the indebtedness, it is bound by such an agreement. The deposit in such a case is a special one, although the books of the bank do not in terms show it to be such. *Lynam, Trustee* v. *Belfast National Bank,* 98 Me., 448; *Smith* v. *Bank,* 147 Ia., 640; *Carter* v. *Martin,* 22 Ind. Appl. 445.

The evidence tends to prove that for several months after the creation of the large overdraft constituting indebtedness of Williams to the bank, he was permitted to carry a checking account through and out of which he paid for the timber purchased by him and resold. In all such instances, he was unable to pay for the timber, until after the receipt and deposit of the money for which the timber was resold. There were several transactions similar to the one involved here. In this instance, there is testimony tending strongly to prove that the timber company draft was taken for collection and deposit, with the understanding that the depositor might check upon it, for the purpose of paying for the timber the money practically represented. If the bank, through its assistant cashier, made such an agreement, or, if it can be inferred from the established course of business between the bank and Williams, the deposit was a special one precluding right in the bank to appropriate it to payment of the old debt, except as to such portion thereof as may remain after the discharge of the timber obligations of the depositor. By its peremptory instruction to find for the bank, the court denied the right of the plaintiff to have the jury determine the character of the deposit, as a question of fact arising out of the evidence.

' The conclusion thus indicated is resisted on three grounds, namely, inappropriateness of the remedy, failure to plead the agreement and conclusiveness of the right of set-off. The objection to the remedy stands upon the theory of a trust re-

lation between Williams and the bank, cognizable in a court of equity. If it is a subject of equity jurisdiction at all, such jurisdiction is obviously not exclusive. Treated as the mere agent of Williams and not as his debtor, the bank would be liable to him in an action at law. Its failure to pay on demand would give such a right of action. *Wait* v. *Building Ass'n.,* 76 W. Va., 431, 450; 16 Ency. Pl. & Pr., 911, 914; Clark & Skyles, Agency, sec. 423. If a trust is involved at all, it is a mere dry trust imposing no active duty upon the trustee and vesting no title in it, other than a mere right of possession until demand for payment. Of course an agent may be sued in equity for an accounting, but he may be sued at law also, and the principal has a right of election as to the forum. A liability is beyond the reach of a judgment or order on a suggestion, when it can be enforced only in a court of equity, not when it can be enforced either in a court of law or a court of equity, at the election of the party in whose favor it is. *Swann, Adm'r.* v. *Summers,* 19 W. Va. 115, 125.

Nor would the bank have a right of set-off, against its special contract waiving the benefit of the set-off statute. On this question, there is conflict in the authorities, but the weight of modern authority upholds contracts of waiver or relinquishment of the statutory right, founded upon valuable considerations. Early English decisions recognized no such right and applied the statute, even though there was an agreement not to invoke it. *Lechmere* v. *Hawkins,* Esp. Ni. Pri. R. 626; *Cornforth* v. *Rivett,* 2 Maul. & Sel. 510; *Eland* v. Kerr, 1 East. 375. To some extent these decisions have been followed in *America. Downer* v. *Eggleston,* 15 Wend. (N. Y.) 51; *Gutchess* v. *Daniels,* 58 Barb. (N. Y.) 401; Waterman Set-off, p. 680, 681; *Lovett* v. *King,* 16 Ind. 464. That such an agreement is valid and binding is now generally accepted in this country. *Gutchess* v. *Daniels,* 49 N. Y. 605; *Oil Co.* v. *Oil & Mining Co.,* 66 Pa. St. 375; *Hill* v. *Parsons,* 110 Ill. 107; *Nottebohm* v. *Maas,* 3 Rob. (N. Y.) 249; *Bank* v. *Railway Co.,* 123 Wis. 389; *Blood* v. *Crew Levick Co.,* 177 Pa. St. 606; 55 Am. St., 742; *Stacy* v. *Cook,* 62 Kan. 50; *Fitzgerald* v. *Bank,* 64 Minn. 469. The agreement may be

implied as well as express. 25 Am. & Eng. Ency. L., 497. A special deposit in a bank is deemed and held to be an agreement on the part of the bank, to waive or relinquish its right of set-off, and to be founded upon a sufficient consideration. *Fitzgerald* v. *Bank,* 64 Minn. 469; *Lynam* v. *Bank,* 98 Me. 448; *Smith* v. *Bank,* 147 Ia. 640; *Carter* v. *Martin,* 22 Ind. App. 445.

Another suggestion is that the agreement cannot be invoked, in the absence of a plea setting it up as a defense. The statute expressly dispenses with formal pleadings in a proceeding by suggestion or garnishment founded upon an execution. It says: ''The court shall cause a jury to be impaneled without any formal pleadings, to inquire as to such debts or effects.'' Code, ch. 141, sec. 12. The broad issue is whether the garnishee owes the judgment debtor anything or has property belonging to him.

These principles and conclusions make the action of the court, in directing a verdict for the bank, manifestly erroneous.

As six of the seven instructions requested by the plaintiff and refused by the court were based upon the untenable theories of lack of contractual relation between the bank and Williams in his individual capacity, discharge by novation and by extension of time to the alleged principal debtor and by election to hold the principal, the court properly refused them. The other one, No. 7, which would have advised the jury that Williams was not bound by the contract of December 3, 1909, should have been given.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*