## In re DAHNKE–WALKER MILLING CO.

(District Court, W. D. Tennessee, E. D. April 22, 1924.)

No. 1087.

**1. Bankruptcy ⬳340—Burden rested on trustee to show novation was worked by acceptance of note.**

Where bankrupt obtained credit with bank on forged bills of lading and drafts, and on discovery of forgery bank required officers of bankrupt to give their personal notes for amount, burden of showing novation rested on trustee in bankruptcy.

**2. Novation ⬳7—Extinguishment of indebtedness and novation by accepting note arises only on agreement of parties.**

Where company obtained credit in bank through forged bills of lading, and on discovery of forgery bank obtained personal note of officers of bankrupt for amount, extinguishment and novation did not arise, unless by agreement of parties or by such acts as clearly indicated intention to cancel original debt and accept note in payment or substitution thereof.

**3. Bankruptcy ⬳340—Unauthorized destruction of fictitious bills of lading and drafts held not to show novation by acceptance of notes of officers of bankrupt.**

Where bankrupt obtained money from bank on fictitious bills of lading and drafts, and on discovery of forgery bank obtained personal notes of officers of bankrupt, bank was not charged with unwarranted acts of such officers of bankrupt in destroying the bills of lading and drafts when given them for inspection, so as to show acceptance of notes was novation of indebtedness.

**4. Bankruptcy ⬳308—Bank held entitled to file claims against bankrupt company and bankrupt sureties.**

Where creditor required bankrupt's officers to give individual notes as security, bank could file its claim against bankrupt company and also against estate of officers as individual bankrupts.

**5. Bankruptcy ⬳312—Bank held not estopped to present claim against bankrupt company by evasion of law in its book keeping.**

Where bankrupt company's creditor obtained personal notes of officers of bankrupt as security, bank was not estopped to present its claim against bankrupt company, because it had been extended full amount of credit on books and bank sought to evade law by accepting note and having entries on its books show credit to other parties as individuals.

In Bankruptcy. In the matter of the estate of the Dahnke-Walker Milling Company, bankrupt. On petition to review order of referee denying the Third National Bank of Union City right to file claim as creditor. Order reversed.

W. M. Miles, of Union City, Tenn., for the bankrupts.

Pierce & Fry, of Union City, Tenn., for petitioning creditors.

ROSS, District Judge. The bankrupt, Dahnke-Walker Milling Company, was a Tennessee corporation engaged in the grain and milling business at Union City, Tenn. For quite a long while prior to the creation of the indebtedness in question it had been a custom of the bankrupt in conducting its business to ship grain, draw a draft with bill of lading attached, and take the drafts to the Third National Bank at Union City, where it would receive credit therefor. A short while prior to the bankruptcy proceedings the bankrupt became involved, and one of its officers presented to the Third National Bank drafts with bills of lading attached, which bills of lading were forgeries or, more properly stated, were fictitious. No such shipments had been made as represented by the bills of lading, and no foundation existed for the amounts for which the drafts were drawn. In ignorance of the falsity of these claims the Third National Bank passed credit to the Dahnke-Walker Milling Company to the extent of about $10,000 before discovering that the bills of lading and draft were fictitious. Upon being apprised of the facts that a draft for about $3,000 had been returned, the president of the bank went to the president of the Dahnke-Walker Milling Company and made inquiry concerning the matter, and was then informed as to the character of the draft and bill of lading. Further inquiry revealed the fact that the bank had advanced credit on a considerable number of these drafts. The president then demanded security for the indebtedness thus created, whereupon three of the officials of the Dahnke-Walker Milling Company executed to the bank their note for $10,000. The Dahnke-Walker Milling Company was soon thereafter adjudicated a bankrupt, and the bank filed in that proceeding the note mentioned, upon which it sought to have itself established as one of the creditors of the bankrupt. The note bore a small credit, leaving the amount claimed by the bank, the sum of $9,462.16. The trustee in bankruptcy duly excepted to the allowance of this claim, on the ground that by accepting the note the bank had released its claim against Dahnke-Walker Milling Company. The matter was heard before the referee, Hon. P. W. Maddox, and an order entered denying the bank the right to file its claim as a creditor. Petition for review was filed and the matter is now presented for determination.

While the Dahnke-Walker Milling Company bankruptcy proceedings were pending, George Dahnke, the president thereof, and J. A. Coble, who jointly signed the note with him and one G. S. Allen, became bank-

rupt. Allen became a fugitive from justice. A short time after the bankruptcy proceedings as to George Dahnke were instituted, he died. The bank has also filed its claim in each of the bankruptcy proceedings against George Dahnke and J. A. Coble seeking to hold their estates individually liable on said note.

The record clearly discloses that at the time the credit was extended to the Dahnke-Walker Milling Company by the bank on the fictitious evidences presented by the bills of lading and drafts mentioned the bank had no knowledge whatsoever as to their character. It is equally clear from the record that, when the nature of the dealing was made known to the bank and the note of George Dahnke, J. A. Coble and G. S. Allen executed, the bank had no intention whatever of releasing its claim against the Dahnke-Walker Milling Company and that it accepted the note merely as security for the indebtedness. It is earnestly insisted by the trustee that the acceptance of the note was an extinguishment of the original indebtedness and worked a novation as to the parties.

[1, 2] Such extinguishment and novation would not have arisen, except by agreement of the parties or by such acts on their part as clearly indicated an intention to cancel the original debt and accept the note in payment or substitution therefor. The record negatives any such intention either by express agreement or by acts. The burden of showing a novation rests upon the trustee. He has not met this burden in any sense. Groc. Co. v. Marshall, 131 Tenn. 275, 174 S. W. 1108; Alder v. Buckley, 1 Swan (Tenn.) 72-3; Sharp v. Fly, 9 Baxt. 4 (Tenn.) 393; Dies v. Bank, 129 Tenn. 95, 165 S. W. 248, Ann. Cas. 1915A, 1090; 20 R. C. L. 670; Lutz v. Williams, 79 W. Va. 609, 91 S. E. 460, L. R. A. 1918A, 79, and authorities cited; Ill. Car & Equipment Co. v. Linstroth Wagon Co., 112 Fed. 737, 50 C. C. A. 504; Anglo-American Land Mortgage & Agency Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89; In re Ransford, 194 Fed. 658, 115 C. C. A. 560; U. S. v. Ill. Surety Co. et al., 226 Fed. 653, 141 C. C. A. 409.

[3] The bank did not surrender the fictitious bills of lading and drafts. They were sent to the officers of the Dahnke-Walker Milling Company upon their request for inspection, and without any knowledge on the part of the bank were by such officers destroyed. The bank was no party to this act, and endeavored to retain them as evidence of the origin of its indebtedness. In no event could it be charged with the unwarranted acts in this regard of the officers of the Dahnke-Walker Milling Company, in view of the facts disclosed by the record.

[4] It is further insisted that the bank cannot be permitted to file its claim against Dahnke-Walker Milling Company and seek also to have it filed against the individual bankrupts. It had a right so to do, and its claim cannot be repelled by reason of that act. Reynolds v. N. Y. Trust Co., 188 Fed. 613, 110 C. C. A. 409, 39 L. R. A. (N. S.) 391; In re McCoy, etc., 150 Fed. 106, 80 C. C. A. 60; Chapman v. Bowen, 207 U. S. 89, 28 Sup. Ct. 32, 52 L. Ed. 116; 3 R. C. L. p. 213; Robinson v. Seaboard Nat. Bank, 247 Fed. 667, 159 C. C. A. 569, 10 A. L. R. 842, certiorari denied by United States Supreme Court, 248 U. S. 567, 39 Sup. Ct. 9, 63 L. Ed. 425; A. Leschen & Sons Rope Co. v. Mayflower Gold Mining & Reduction Co., 173 Fed. 855, 97 C. C. A. 465, 35 L. R. A. (N. S.) 1.

[5] The only other objection to the claim is that the bank is estopped to now present this claim against Dahnke-Walker Milling Company because it appears in the record that Dahnke-Walker Milling Company had been extended the full amount of its credit on the books of the bank, and the bank sought to evade the law by accepting the note and having the entries on its book show credit to other parties as individuals for an indebtedness which it insists was the indebtedness of the Dahnke-Walker Milling Company. While this may have been very irregular, it would not preclude it from filing the claim in question.

In view of the facts disclosed in the record and the law, I am constrained to reverse the finding of the referee, and to hold that the claim in question may be filed and prosecuted against the estate of Dahnke-Walker Milling Company. An order will be prepared and entered accordingly.