C. E. BICKERS and H. M. JUDD v. W. G. PIXTON.

Eastern Section.  September 10, 1930.

Petition for Certiorari denied by Supreme Court, February 21, 1931.

Joe Frassrand and Miller, Miller & Martin, all of Chattanooga, for appellant.

Thomas, Thomas & Darwin and Chas. S. Coffey, all of Chattanooga, for appellee.

THOMPSON, J.   The complainants, Bickers and Judd, filed the original bill in this cause to recover from the defendant, Pixton, upon a $176.05 promissory note alleged to have been made and delivered to them by said defendant.  Defendant filed an answer showing among other defenses that the note as made and delivered by him was payable only to Bickers and had after delivery and without his consent been materially altered by the addition of the name of complainant, Judd, as a payee.

Thereupon the complainants by leave of the Court filed an amended bill in which they admitted that the note had been altered as defendant claimed and that no recovery could be had upon it, but alleged that the alteration had been innocently made.  In said amended bill they sought to recover upon the original consideration which they alleged was the premium upon a policy of insurance issued by the Volunteer State Life Insurance Company upon the life of the defendant.  The defendant set up two defenses, i. e., (1) That in applying for the policy and giving his note for the first year's premium it was a condition that the same should not be binding upon him unless and until he examined, approved and accepted the policy; that before the policy was issued he notified complainant, Bickers, that he cancelled his application; that nevertheless Bickers delivered the policy to him, but upon examining it he did not approve it or accept it but returned it to Bickers, etc., and (2) that the note in question was given in satisfaction and extinguishment of the premium—the original consideration sued upon.

The Chancellor did not find the facts with reference to the first of these defenses, but did find them with reference to the second.  He recognized that the alteration had been innocently made, but after citing Grocery Co. v. Marshall, 131 Tenn., 270, 174 S. W., 1108, and Bank v. Yowell, 155 Tenn., 430, 294 S. W., 1101, he found that the note originally sued upon had been accepted by the complainants in payment, extinguishment and satisfaction of the first year's premium

of said policy, which he held was the original consideration sued upon. He then entered a decree dismissing complainants' suit at their cost. They have appealed to this Court and have assigned errors.

The Volunteer State Life Insurance Company has its home-office in Chattanooga. One J. W. Bishop was its general agent at Chattanooga and surrounding territory. Bishop had a number of men soliciting insurance for him upon a commission basis. Two of these men were complainants who worked as a "team." Complainants, when they would procure a person to apply for insurance, would frequently take from said person a promissory note payable to them for the first year's premium. Then when the company would accept the risk (agree to issue the policy) they would endorse the note and deliver it to Bishop, who would endorse it and sell it to a bank. Bishop would pay the insurance company its part of the said premium and would then pay complainants their part—said payments being made by crediting complainants' account with him until the next regular period for settlement with them. Defendant, of course, knew nothing of this system of doing business.

The defendant was in the employ of the Tennessee Electric Power Company at Guild, Tennessee, which is near Chattanooga.

On August 9, 1927, complainants went to Guild, Tennessee, to solicit applications for life insurance. They called upon defendant. At that time the defendant had made application and had been examined for a policy in the New York Life Insurance Company, and his application was then pending, but complainants testified that defendant told them that he had not obligated himself to accept a policy from said New York Life Insurance Company, so they solicited him to apply for a policy in the Volunteer State Life Insurance Company. He signed an application for such a policy and executed the note sued upon in the original bill. One of his contentions is that he signed the application and executed the note with the understanding and agreement with complainants that if upon examining the policy upon its issuance he decided not to take and accept it he could return it to complainants and get his note back. The complainants deny that any such agreement or understanding existed. They say that he signed the application and executed the note in the usual way and without reservation.

The application which defendant signed contained the following:

"It is agreed (1) that there shall be no liability hereunder until a policy shall be issued, and delivered to me, while in continued good health, and the first premium thereon actually paid during my lifetime, provided however, that if said premium is paid in full to the Volunteer State Life Insurance Company's agent at the time of making this application, and if said Company's Medical Director

shall approve this application without change, then the insurance (subject to the provisions of the policy applied for) shall be effective from the date of the medical examination," etc.

Said application was of course on one of the company's printed forms. Said form had attached to it a form of receipt which was filled in by the complainants, was detached by them and was given by them to the defendant at the time he signed the application and gave the note on said August 9, 1927. Said receipt had printed on one end of it the following:

"Upon payment of the premium, this receipt must be completed and given to the applicant. Where settlement is not made in full, this receipt must not be detached."

The body of the receipt was as follows:

"No Other Form of Receipt For Advance Payment of Amount of Premium will be recognized by the Company.

"Received of W. G. Pixton, who has applied to The Volunteer State Life Insurance Company for $7,600 insurance on the Income for Life Age 60 plan, the sum of One Hundred Seventy-Six, 05/00 Dollars, the amount of the first Annual premium on such policy; the said payment being made subject to the terms and conditions of Agreement No. (1) contained in said application, as shown on the reverse side hereof.

"C. E. Bickers, Agent,"

"Guild, Tenn., Aug. 9, 1927,"

On the reverse side of the receipt was the following:

"It is agreed (1) that there shall be no liability hereunder until a policy shall be issued, and delivered to me, while in continued good health, and the first premium thereon actually paid during my lifetime, provided, however, that if said premium is paid in full to the Volunteer State Life Insurance Company's agent at the time of making this application, and if said Company's Medical Director shall approve this application without change, then the insurance (subject to the provisions of the policy applied for) shall be effective from the date of the medical examination," etc.

While complainants were at Guild on August 9, 1927, they arranged for defendant to be examined by a physician. Either on the afternoon of August 9, 1927, or on the morning of August 10, 1927, the complainant turned in to Mr. Bishop or to the Company the defendant's application, and on August 10, 1927, the Company's Medical Examiner approved the risk, etc. Complainants then endorsed the note and turned it over to Bishop. Bishop then endorsed it and sold it to a bank. He then credited complainants' account with him with their percentage of the proceeds of said note, and credited the Company's account with him with its part of the first year's premium on the policy applied for.

Although the policy was dated August 10, 1927, the date the Company's Medical Examiner approved the application, yet it was not actually written up and signed and did not reach the office of Mr. Bishop and go into the hands of the complainants for delivery to the defendant until August 14, 1927.

On August 15, 1927, complainants took the policy to Guild, turned it over to defendant and took from him the following receipt:

"Form No. 82.

"The Volunteer State Life Insurance Company,

"Home Office Chattanooga, Tennessee.

"Policy Receipt.

"Policy Forwarded Aug. 15, 1927.

"I acknowledge receipt this date of the policy described below issued by the Volunteer State Life Insurance Company. After careful examination of said policy I find it satisfactory in every respect.

| "Due Date | Date of Pol. | Mo. | Yr. | Agency | Policy No. | Premium |
|-----------|--------------|-----|-----|--------|-----------|---------|
| 1927 Aug. | 10th | | 8-27 | 367T285 | 84211 | $176.05 |

"Insured's name   )  William G. Pixton

"Address           )  Guild, Tenn., Hamilton Co.

---

"Settlement has been made as follows:  Cash $_____
Note $176.05, Due_____

"Signed this 18th. day of Aug. 1927.

"W. G. Pixton.

"Witness: C. E. Bickers, Agent."

---

"Notice—This receipt must be obtained for each policy delivered and forwarded to the Home Office immediately after delivery of policy."

Thereafter defendant mailed the policy back to complainants who returned it to him. Thereafter he held it subject to complainants' orders. Each party put the matter in the hands of attorneys who wrote several letters back and forth, etc.

At the maturity of the note defendant refused to pay it. Complainants paid the note to the bank—they being endorsers thereon—but the bank by mistake stamped the note paid and mailed it to defendant.

The Chancellor in his memorandum said:

"It was the insistence of the complainants and still is that the insurance was effective from the date of the medical examination, to-wit: August 10, 1927. If this were so (and it would have been so if defendant had not rejected the policy) then necessarily the complainants must have regarded the note as actual payment of the premium, in full, in accordance with said Agreement (1).

"It seems to me there is no escape from this conclusion based upon the documents. The testimony of Bickers and Judd so far as it relates to this aspect of the case is in harmony with this view. They show that they regarded the note as a full settlement in advance of the premium or as put by Judd as so much cash.

"It is perhaps not accurate to say that the note operated to extinguish the prior obligation for the premium, because there was no prior obligation for the premium. At the time the note was given there was no insurance. Whether there would ever be, depended upon three contingencies, to-wit, (1) acceptance of the application by the company and delivery of the policy (2) the defendant being still in good health at the delivery of the policy, and (3) defendant's acceptance of the policy. If all these contingencies had happened (the third did not), still no obligation of defendant for premium as premium could ever have arisen. That had been settled and paid in advance with the note, as shown by the very terms of said receipt, Exhibit 2. Therefore, defendant's obligation, if any, must be on the note and not on the premium. As this view is conclusive of the case I do not deem it necessary to discuss the other aspect of it."

In the foregoing the Chancellor impliedly upheld defendant's contention that at the time he made the application and gave the note he had an agreement and understanding with the complainants that if and when the policy should be issued and delivered to him he should have the right to keep it a short time for the purpose of examining it and determining whether or not he would accept and keep it, and that if he decided not to keep it he should have the right to return it to complainants and receive back his note, etc., which right he duly exercised. This contention of the defendant is in direct opposition to the terms and provisions of the application, the note, the receipt for the premium which complainants gave to the defendant, and the receipt for the policy which the defendant executed to the complainants when they turned the policy over to him on August 15, 1927. And it is in direct conflict with the positive testimony of the complainants. After examining the record, including the sworn answer of the defendant and the correspondence which was exhibited thereto, and the testimony of the defendant's witness, Pickle, we are of the opinion that complainants successfully proved that no such agreement was made with defendant, and that the application and note were taken in the usual and ordinary way. It results that in our opinion, and we so hold, that the insurance went into effect on August 10, 1927, and remained in effect thereafter for the policy period. And we think that the question of whether or not the complainants (the note having been innocently altered by them) are entitled to recover upon the original consideration should be viewed from this standpoint.

It is true that under the provisions of the application and receipt hereinbefore quoted, the giving of the note followed by the Company's acceptance of the risk and issuance of the policy, constituted such a payment of the premium as rendered the policy in force and effect from and after August 10, 1927, and as would have entitled defendant to a recovery upon said policy if any of the contingencies insured against had happened. But it does not necessarily follow that at the time the note was given by defendant and accepted by complainants it was intended by the parties as an extinguishment of the contemplated obligation or liability for which it was given by defendant and accepted by complainants. When defendant made the application and executed the note he contracted a contingent liability either to the complainants or to the complainant Bickers (not to the company) for the amount of the first year's premium—said liability being contingent upon the company's accepting his application and issuing the policy. And for this contingent liability he gave the note payable to Bickers. The consideration for this contingent liability was that complainants or complainant, Bickers, would pay to the company its part of the first year's premium and would procure the issuance and delivery of the policy applied for.

The consideration for the note was the complainants' payment to the Company of its part of the premium, and their procurement and delivery of the policy.

Now it seems to us that there was nothing in the transaction from which we can conclude that the giving of the note by the defendant and its acceptance by the complainants was intended by the parties as an extinguishment of the above mentioned liability in the event the defendant should fail to pay the note.

It results that in our opinion the decree of the Chancellor was erroneous, and the same will be set aside. A decree will be entered in this Court in favor of the complainants and against the defendant for the sum of $176.05, and interest thereon from August 9, 1927, and the costs of the cause, including the cost of the appeal to this Court.

Portrum and Snodgrass, JJ., concur.